UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEANETTE L. DUNN            )
                           )
        Plaintiff,         )
                           )
    v.                     )    Case No. 3:14-CV-1974-JD
                           )
CAROLYN W. COLVIN, Acting  )
Commissioner of Social Security,  )
                           )
        Defendant.         )

## ORDER

This is a social security appeal. The Claimant, Jeanette Dunn, applied for social security

disability benefits, but the Social Security Administration denied her application. So, she filed

this action seeking review of the Commissioner's decision. The parties have now briefed the

matter and it is ripe for review. [DE 15]; [DE 24][1]; [DE 27]. For the foregoing reasons, the

Court REVERSES the decision of the Commissioner.

## FACTUAL BACKGROUND

Dunn applied for social security disability benefits on August 22, 2011, alleging a

disability onset date of July 13, 2010. Tr. 21. Her claim was denied once initially and again on

reconsideration. Tr. 81, 91. At Dunn's request, Administrative Law Judge William E. Sampson

(the ALJ) then held a hearing on April 22, 2013, at which Dunn was represented by counsel.

### I. Dunn's Testimony

At the hearing, Dunn testified that she worked as a laborer until 2010. At that time she

was laid off because she was experiencing problems with her left arm and there was "very little"

---

[1] The Commissioner submitted two response briefs, [DE 23] and [DE 24], which are textually identical but signed
by different attorneys. For the sake of simplicity, the Court will refer to only one of the Commissioner's briefs: [DE
24].

work that she could do.  Tr. 43.  She returned to work briefly in 2011, but had intestinal issues and was only able to work for nine days.  Tr. 62-63.

She also indicated that she suffers from a variety of ailments.  She has a heart condition, for which she received a pacemaker (technically known as an automatic cardiac defibrillator) in 2005.  It was later replaced in 2009.  Tr. 40-41.  It has never had to shock her heart to bring it back into rhythm, though it still causes her anxiety.  Tr. 41-42.  It also causes pain and discomfort in her left shoulder, which worsened after the 2009 operation.  Tr. 42-43.  As a result, she is now unable to use her left arm for "much of anything."  Tr. 47.  Additionally, she experiences lightheadedness due to an irregular atrial fibrillation, tr. 42, and fatigue, which causes her to take naps at least every other day.  Tr. 51.

Dunn also indicated that she has herniated discs in the L4-L5 section of her spine.  Tr. 48. This causes her pain and restricts her ability to stand and walk.  She stated that she cannot stand for more than an hour or walk for more than a block at once.  Tr. 48.  However, she believes she can probably stand for half an hour at a time.  Tr. 48.

She further testified that she had a portion of her colon removed approximately eight years before the hearing.  Tr. 58.  She has irritable bowel syndrome (IBS) and suffers cramps, constipation and diarrhea.  Tr. 58-60.  She stated that she has episodes of IBS severe enough to disrupt her work day two to three times a week, which arise unpredictably and cause her intense pain.  Tr. 60, 64.  They usually last a day and a half to two days, sometimes confining her to her house for twenty-four hours at a time.  Tr. 60.  The shortest amount of time she requires to deal with an episode of IBS is twenty minutes.  Tr. 65.

*II. The Medical Evidence*

Prior to issuing an opinion, the ALJ also considered the medical evidence. It shows that Dunn had a pacemaker implanted in 2005 at Northwest Indiana Cardiovascular Physicians to treat her ventricular tachycardia and syncope. Tr. 301. That pacemaker was replaced in January 2009. Tr. 352. Shortly after the replacement procedure, Dunn reported that her heart was not racing and that she was not experiencing any problems with the replacement. Tr. 234. She performed a stress test on November 30, 2009, in which she exercised on a treadmill and reached 97% of her age-predicted maximum heart rate. Tr. 269. During that test she did not have chest pain, though had some shortness of breath. Tr. 269.

Dr. Hector Marchand, a cardiologist, performed a heart catheterization on Dunn on December 16, 2009. Tr. 263. He noted Dunn's history of sudden death syndrome due to ventricular tachycardia and episodes of chest pain, as well as her family history of coronary artery disease. Tr. 264. He found, however, that her heart looked normal besides a dominant right coronary artery. Tr. 263.

On December 7, 2009 and October 27, 2010, Dunn visited Dr. Sudhakar Garlapati, a family practice physician, and complained that she was experiencing lower back pain. Tr. 311, 313. Dunn also told Dr. Garlapati that she felt very fatigued on July 20, 2010. Tr. 312.

On November 19, 2009, Dunn complained to Dr. Marchand of pain in her chest that worsened with activity. Tr. 232. On December 8, 2010, Dr. Marchand noted that Dunn's heart had a stable rhythm. Tr. 229. On December 12, 2010, he noted that she was experiencing stress, tachycardia and chest pain. Tr. 230.

On June 8, 2011, Dunn informed Dr. Marchand that she lacked stamina and felt fatigued. She also complained of episodes of chest pain. Tr. 228. On June 13, 2011, Dunn again saw Dr.

Marchand and complained of episodes of chest pain and shortness of breath. Tr. 268. She told Dr. Marchand that her work required her to do physical labor, so he ordered her to perform another stress test. During that test, Dunn exercised on the treadmill and reached 90% of her age-predicted maximum heart rate. Tr. 268. She experienced fatigue and shortness of breath, but no chest pain. Tr. 268. Her electrocardiogram was normal, showing a heartrate of seventy-five beats per minute and a normal sinus rhythm. Tr. 268. On June 22, 2011, Marchand noted that Dunn had "[m]any symptoms of fatigue, shortness of breath and chest pains." Tr. 265.

On November 2, 2011, Dunn had an appointment with Dr. Teofilo Bautista, an agency doctor. Dr. Bautista noted that Dunn had medical history which included a thyroidectomy, colon resection, placement of a defibrillator and a history of irritable bowel syndrome. Tr. 355-56. Dr. Bautista found that Dunn had minimal valvular heart disease, mild mitral valve prolapse and mitral valve insufficiency. Tr. 355. He further noted that she had constipation and diarrhea but that she was taking Sorbitol for this, which was effective. Tr. 355.

At her visit with Dr. Bautista, Dunn complained of chest discomfort, fatigue and heart palpitations. Tr. 355. She "[r]efused and [was] unable to do range of motion" tests on her back because of lower back pain and herniated discs. Tr. 357. She was also unable to do range of motion tests of either hip due to her lower back pain and defibrillator placement. Tr. 357. She did not complain of shoulder pain and was able to raise both arms to shoulder level, though she complained of weakness in her left arm. Tr. 357. Dr. Bautista noted that muscle tone and strength in her upper left arm was normal though not as strong as her right arm. Tr. 357. Dr. Whitley, a medical consultant, reviewed Dr. Bautista's report and concluded that Dunn had the ability to carry more than twenty pounds occasionally and ten pounds frequently, to push or pull

an unlimited weight and to sit, stand or walk with normal breaks for about six hours in an eight-hour work day.  Tr. 360.

On November 3, 2011, Dunn complained of being tired, winded, and limited by her left side to Dr. Marchand.  Tr. 371.

On January 23, 2012, Dunn saw Dr. Roaland Thomas, a general surgeon, and complained of episodes of constipation and diarrhea.  She said that the episodes, which occurred once a week, kept her in her home for twenty-four hours at a time.  Tr. 392.

On April 10, 2012, Dunn complained of fatigue, lower back pain, and abdominal pain to Dr. Garlapati.  Tr. 367.

On May 3, 2012, she complained of heart palpitations and anxiety to Dr. Marchand, though Dr. Marchand noted that she had a stable cardiac exam.  Tr. 370.  On May 24, 2012, she was seen at Northwest Indiana Cardiovascular and reported fatigue, heart palpitations, occasional dizziness and that she had experienced sharp chest pain approximately two months ago.  Tr. 411.

On May 29, 2012, Dunn had an appointment with a second agency doctor, Dr. Mutena Korman.  In that visit, Dunn reported fainting spells, generalized weakness and dizziness and back pain.  Tr. 381.  She also reported a history of irritable bowel syndrome due to a spastic colon and a prior associated surgery.  Tr. 381.  She said the skin over her defibrillator was tender.  Tr. 381.  She underwent a range of motion test, which showed reduced mobility in her back.  Tr. 385.  She was unable to perform range of motion testing on her left shoulder, however, due to tenderness and pain from her pacemaker surgery.  Tr. 382.  Dr. Korman noted that her left shoulder was "frozen."  Tr. 382.  He further opined that Dunn would require intense medical monitoring and treatment. Tr. 382.

On June 18, 2012 Dunn returned to Dr. Garlapati and complained that she had experienced body aches and joint pain intermittently for the past 2 months. Tr. 405. On June 26, 2012 Dr. Garlapati informed Dunn that she should use Aleve to relieve the pain rather than a prescription drug due to her history of allergic reactions to pain medication. Tr. 406.

On November 8, 2012, Dunn visited Northwest Indiana Cardiovascular and complained of fibromyalgia and pain that interfered with her ability to sleep and walk, among other things. Tr. 409. She returned on November 28, 2012, when she complained of pain in her left shoulder and arm. Tr. 407. Her medical staff informed her that there was a ninety-percent chance that her pain could be eliminated by replacing her sub-cutaneous defibrillator with a sub-pectoral defibrillator. Tr. 408.

### III. The ALJ's Decision

After reviewing this medical evidence and hearing Dunn's testimony, the ALJ issued a written opinion which upheld the decision to deny Dunn benefits. He found that Dunn met the insured status requirements of the Social Security Act through September 30, 2016 and that Dunn had not engaged in substantial gainful activity since her alleged disability onset date. Tr. 23. He further found that Dunn was severely impaired by frozen left shoulder syndrome and her heart condition (non-ischemic dilated cardiomyopathy accompanied by sustained ventricular tachycardia). Tr. 23. He also determined that Dunn had several non-severe impairments—hypothyroidism, high cholesterol, a hormone disorder, irritable bowel syndrome, fibromyalgia and an anxiety disorder. He concluded, however, that none of Dunn's impairments met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Appendix 1. Tr. 23, 27. The ALJ then evaluated Dunn's residual functional capacity (RFC) and found that:

> [She is able to] perform light work as defined in 20 CFR 404.1567(b) except that she is limited to work requiring no climbing of ladders, ropes, and scaffolds, no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, no overhead reaching with the left upper extremity, which avoids concentrated exposure to hazards and heights and all exposure to high-magnetic and electromagnetic fields, and permits ready access to bathrooms within five minutes.

Tr. 27. Applying this RFC, the ALJ found that Dunn was capable of performing her past work as an office clerk and thus was not disabled. Tr. 30. The Appeals Council denied review of that decision, making it the final determination of the Commissioner. 20 C.F.R. § 404.981; *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

## STANDARD OF REVIEW

The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). The ALJ must also "articulate at some minimal level

his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference. So, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of his factual findings. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20

C.F.R. § 404.1520(a)(4)(iii).  However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity (RFC) between steps three and four.  The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five.  20 C.F.R. § 404.1520(e).  The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Dunn argues that the ALJ erred in three respects.  First, she says that he improperly neglected to order an x-ray[2] on her back.  Second, she says he erred in evaluating the credibility of her testimony, which adversely affected her RFC.  Third, she says that he mistakenly assessed her past work when he described it with an incorrect *Dictionary of Occupational Titles* number.  She also contends that the Appeals Council incorrectly declined to review her case despite her presentation of new evidence.  The Court will address each of these arguments in turn.

*I.  Failure to Order an X-Ray on Dunn's Back*

Dunn first says that the ALJ erred in failing to order an x-ray on her back.  The Commissioner responds that the ALJ had no obligation to order diagnostic tests on Dunn's back because the evidence did not indicate that her back pain amounted to a medically determinable impairment.  And, the Commissioner says, it was Dunn's burden, not the ALJ's, to establish that at step two of the disability analysis.

The Commissioner's position confuses the claimant's burden of proof with the ALJ's obligation to develop the record.  The former requires that a claimant's claim be denied if she cannot produce evidence to substantiate her claim, but the latter requires the ALJ to assist the

---

[2] While she contends that the ALJ should have ordered an x-ray, an MRI seems a better diagnostic tool for soft-tissue injuries.  *Hall v. Colvin*, 778 F.3d 688, 690 (7th Cir. 2015).

claimant in gathering available evidence. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record.") (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

Generally, the Court "gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish that goal." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011). The ALJ should, however, order a consultative exam under certain circumstances, such as "when evidence in the record establishes a reasonable possibility of the existence of a disability and the result of the consultative examination could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* (quoting *Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir.1997)). But, it is incumbent on the Claimant to first produce some objective evidence to show that further development of the record is required, particularly if she is counseled. *Id.*

Here, the ALJ does not appear to have had a reasonable justification for not ordering an x-ray of Dunn's back prior to determining that she was not disabled. Dunn testified that she suffered from back pain which prevented her from standing or walking for substantial periods of time. Tr. 48. That testimony had some support in the record. Dunn complained of back pain to Dr. Garlapati in December 2009, October 2010 and April 2012. Tr. 313, 311, 367. In November 2011, Dr. Bautista noted that Dunn had "[r]efused and [was] unable to do a range of motion of the back due to low back pain and [a] history of two herniated discs." Tr. 357. When Dunn did submit to a lower back range of motion test several months later in May 2012, Dr. Korman found that Dunn had reduced range of motion in her lower back. Tr. 385.

This indicates "a reasonable possibility" that Dunn suffered from disabling back pain due to herniated discs in her spine. An x-ray would have been of material assistance in ascertaining whether that was true. Accordingly, the ALJ erred in failing to order tests to ascertain the extent of Dunn's alleged back injury. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (finding that ALJ should have ordered an MRI to assess a claimant's alleged injury, rather than denying benefits for lack of confirmation by diagnostic tests).

This failure to develop a full and fair record warrants reversal of the ALJ's decision. *See Nelms*, 553 F.3d at 1100. On remand, the ALJ should order a consultative examination on Dunn's back. But while this misstep alone justifies reversal, the Court nevertheless addresses the parties' remaining arguments in the interest of thoroughness and to guide the ALJ's further treatment of this matter.

## II. The ALJ's Credibility Findings

Dunn next contends that the ALJ improperly discredited parts of her testimony and consequently adopted an insufficiently restrictive RFC. Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Reed v. Colvin*, No. 1:14-CV-080 JD, 2015 WL 4921614, at *3 (N.D. Ind. Aug. 18, 2015) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, at *2; *see also Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013)). Dunn argues that the ALJ erred in evaluating her

credibility as to her testimony about her back pain, frozen left shoulder, fatigue and irritable bowel syndrome.

### 1. Back Pain

Dunn contests the ALJ's decision not to credit her testimony that she had herniated discs in the L4-L5 segment of her spine, which prevented her from being on her feet for more than thirty minutes to an hour at a time. Tr. 48. The ALJ found that Dunn's alleged back issues did not constitute "a medically determinable impairment which more than minimally" impacted her "ability to engage in basic work activity[.]" Tr. 25. He further concluded that she is capable of light work, which can require "a good deal of walking or standing." Tr. 27; 20 C.F.R. § 404.1567(b). The Commissioner argues that the ALJ's decision was properly grounded in the observation that Dunn's claims of back problems were neither supported by medical evidence nor corroborated by Dunn's treatment history. Dunn responds these were insufficient reasons for discounting her testimony.

The Court agrees with Dunn. First, it was error to find that Dunn had a sparse treatment history which was probative of a lack of back pain. Rather, Dunn testified that she had received physical therapy for her back. Tr. 48. She also took Aleve and Tramadol for pain (the latter is a scheduled narcotic, 21 C.F.R. § 1308.14(b)(3)). Tr. 223. Moreover, the ALJ should have addressed Dunn's allergies, which appear to have limited her ability to take other potentially more potent pain medications. Tr. 406; *Hill v. Colvin*, 807 F.3d 862, 868 (2015) (noting an ALJ's error in considering a claimant's decision to stop taking narcotic pain relievers without considering testimony that the claimant's doctor was worried about their addictive potential). And even if any probative value could be gleaned from Dunn's ostensibly limited treatment history, the ALJ failed to address her testimony that financial constraints limited her ability to

obtain medical care.  Tr. 61; *Hill*, 807 F.3d at 868 ("ALJs must consider 'any explanations that

the individual may provide, or other information in the case record, that may explain infrequent

or irregular medical visits or failure to seek medical treatment'") (quoting SSR 96-7p); *Pierce v.

Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (rejecting the false implication that "an ALJ can rely

on an uninsured claimant's sparse treatment history to show that a condition was not serious

without exploring why the treatment history was thin.").

     That leaves the ALJ's observation that Dunn's testimony was not supported by objective

medical evidence.  But that alone does not warrant rejecting a claimant's testimony.  While it "is

understandable that administrative law judges want diagnostic confirmation of claims of pain . . .

as numerous cases (and the Social Security Administration's own regulation) make clear, an

administrative law judge may not deny benefits on the sole ground that there is no diagnostic

evidence of pain but only the applicant's or some other witness's say so[.]"  *Hall*, 778 F.3d at

691 (citing SSR 96–7p(4); *Pierce,* 739 F.3d at 1049–50; *Carradine v. Barnhart,* 360 F.3d 751,

753 (7th Cir.2004)).  That is particularly true here, given the above-discussed corroboration of

Dunn's back pain testimony in the record.  So, the ALJ erred in assessing the credibility of

Dunn's testimony as to her back pain.  On remand, he must provide sufficient reasons for his

treatment of it consistent with SSR 96-7p.

     2.  Fatigue

     Dunn also argues that the ALJ improperly discredited her testimony that her heart

condition caused her fatigue, which required her to take naps every day or every other day.  Tr.

51.  The ALJ found that Dunn's heart condition did not result in fatigue that prevented her from

performing light work and declined to include a provision for naps in her RFC.  Tr. 27, 29.  The

Commissioner says the ALJ properly based this finding on a record which indicates that Dunn's

heart condition stabilized at a level that did not cause her significant impairment. Dunn disagrees, arguing that a claimant's stable condition does not reflect on her symptomatology or ability to work.

While it may be uninformative to describe one's condition as stable in the abstract, the ALJ provided context for his findings. He noted that Dunn had performed work requiring light to very heavy levels of exertion with her heart condition. Tr. 28. He also noted that Dunn's December 2009 cardiac catheterization and June 2011 electrocardiogram revealed similarly "unremarkable" results. Tr. 28. Moreover, the ALJ considered Dunn's June 2011 treadmill stress test, in which she exercised to ninety percent of her age-predicted maximum heart rate. Tr. 28. Those observations then informed his finding that "the state of [Dunn's] cardiac impairment has, through 2012, consistently been assessed as stable." Tr. 28. So, the ALJ logically concluded that Dunn's heart condition permitted her to function at a relatively high level. He further found that she had previously performed substantial gainful activity with her heart condition, that her condition had remained stable and thus that Dunn's fatigue did not materially impact her ability to work. That was a reasonable reason for discounting Dunn's credibility. *See Hill*, 807 F.3d at 868 (acknowledging that "consideration of a claimant's work history is proper when the claimant has had essentially the same condition for decades, and remained able to work") (internal quotation marks omitted). Accordingly, the ALJ did not err in concluding Dunn did not suffer from fatigue that would materially impact her ability to work.

### 3. Left Shoulder

Dunn also says the ALJ improperly discounted her testimony that she had difficulty using her left arm for all reaching and lifting. Tr. 47. He found that Dunn's left shoulder did not limit her "beyond the capacity for the limited range of light work described" in her RFC, which

provides only that Dunn cannot reach overhead with her left arm. Tr. 27, 29. Dunn argues that this finding was insufficient, since it fails to account for her testimony that "she had pain with reaching in all directions due to shoulder pain, and was not capable of lifting even a gallon of milk with the left arm." [DE 27 at 6]. The Commissioner responds that the ALJ correctly based his conclusion on the discrepancy between Dr. Korman's finding that Dunn's shoulder required "intense monitoring and treatment" and the minimal treatment that Dunn's physicians actually provided. [DE 24 at 8-9].

A review of the ALJ's decision indicates that he did not provide adequate reasons for discounting the credibility of Dunn's testimony about her shoulder. Contrary to the representations of the Commissioner, the notation in Dunn's medical records that Dunn required "intense monitoring and treatment" was part of a general "diagnostic impression." Tr. 382. It did not specifically indicate that Dunn's *shoulder* (as opposed to, e.g., her cardiac condition) required intense monitoring and treatment. So, that Dunn's shoulder was not aggressively treated in no way undermines her testimony.[3]

The ALJ also failed to substantiate his credibility finding with other evidence. He noted that Dunn had worked as a construction laborer even after the surgeries which she alleges caused her shoulder pain. Tr. 28. But that overlooks Dunn's testimony that her shoulder condition grew worse after her second operation until there was very little work she could do. *See Gaylor v. Astrue*, 292 F. App'x 506, 513 (7th Cir. 2008) (finding that the ALJ improperly considered a claimant's past ability to work without considering the claimant's testimony that his pain grew progressively worse until he could not work). While the ALJ noted evidence that Dunn's heart condition had remained stable, he cited no such evidence regarding her shoulder. The ALJ also

---

[3] To the extent that the Commissioner argues that Dunn's lack of treatment history is otherwise probative, those arguments are rejected for the reasons articulated above in Section II, Subsection I.

observed that an agency doctor concluded Dunn had "intact fine-motor function." Tr. 28. But

that does not speak to Dunn's gross motor function, such as her ability to move her shoulder.

Finally, the ALJ noted that there is a ninety-percent chance that Dunn's pain can be alleviated

with a sub-pectoral implantation. Tr. 29. He did not, however, explain how such an

implantation would be accessible to Dunn, or how she would be able to pay for it given the

financial constraints to which she testified. Accordingly, the ALJ failed to construct a logical

bridge between the evidence in the record and his conclusion that Dunn could use her left arm

provided she did not reach overhead with it.

### 4. Irritable Bowel Syndrome

Dunn further contests the ALJ's treatment of her testimony that she suffered from

irritable bowel syndrome that caused her great pain and required her to have urgent access to a

bathroom. Tr. 50. The ALJ only partially credited this testimony, finding in Dunn's RFC that

she required "ready access to bathrooms within five minutes." Tr. 27. He declined to find any

further restrictions as to Dunn's ability to work, since the evidence did not support "the alleged

level of chronicity and severity of this impairment." Tr. 24. Dunn says that the ALJ did not

sufficiently articulate how having access to a bathroom within five minutes is sufficient to

accommodate her condition, particularly in light of a treatment note that indicates that IBS

attacks can confine her to her home for twenty-four hours at a time. The Commissioner responds

that the ALJ properly found that the record did not support the chronicity or severity of Dunn's

alleged IBS as "the record reflect[s] only intermittent episodes of abdominal pain and

discomfort." [DE 24 at 6]. Moreover, the Commissioner says, the ALJ "noted that the record

otherwise contained no evidence of either treatment for or symptoms of the impairment." *Id.*

The ALJ's treatment of Dunn's irritable bowel syndrome was flawed. As with his

assessment of Dunn's back pain testimony, a dearth of medical evidence was not an independently sufficient reason for discounting Dunn's testimony regarding irritable bowel syndrome.  The ALJ also noted Dunn's normal thyroid stimulating hormone (TSH) level in light of her physician's observation that her alternating constipation and diarrhea could be related to thyroid issues.  Tr. 24.  But that is of scant, if any, relevance since Dunn's physician noted only that *some* of her symptoms *may* be related to hypothyroidism.  Tr. 392.  And at any rate, this simply recasts the point that Dunn's symptoms were not necessarily corroborated by the medical evidence.  Moreover, the ALJ's assertion that, aside from an April 2012 complaint of abdominal pain, "the record is devoid of evidence of any symptoms or treatment associated with this impairment" is flatly incorrect.  Tr. 24.  Rather, Dunn took sorbitol for her IBS, tr. 355, and Dr. Thomas noted that she had symptoms of it in March 2011.  Tr. 338.  Lastly, the ALJ found that Dunn complained of her symptoms "only" once in 2010, once in 2011 and twice in 2012.  Tr. 24.  But that would hardly seem to undermine her credibility and, if anything, would appear to evidence a recurrent problem.  Thus, the ALJ did not provide sufficient reasons for discrediting Dunn's testimony.

Furthermore, the ALJ did not fully incorporate Dunn's testimony into her RFC.  She stated that she needs urgent bathroom access, but her RFC provides only that she requires access to a bathroom within five minutes—a wait time that is hardly consistent with urgency when it comes to matters of personal relief.  Moreover, the RFC does not account for the frequency of Dunn's breaks or the time required for each break.  That is particularly important in light of Dunn's testimony that her attacks last at least twenty minutes each and can confine her to her house for as long as twenty-four hours.  So, on remand, the ALJ must either provide reasons for crediting Dunn's testimony and fully incorporate it into her RFC, or provide sufficient reasons

for rejecting it.

Thus, the ALJ's failure to provide adequate justifications for discrediting Dunn's testimony as to her back pain, left shoulder and irritable bowel syndrome provides an independent basis for reversal. A defective credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that his decision did not depend on the credibility finding. *Pierce*, 739 F.3d at 1051. Neither of those things is true here. Dunn's testimony is not outlandish; indeed, much of it has some support in the record. Moreover, Dunn's testimony, if accepted, would have resulted in a significantly different RFC that accounted for, among other things, her inability to stand for long periods of time, her inability to reach with her left arm and her need for urgent and occasionally lengthy bathroom access.

*III. Remaining Issues*

1. Incorrect Dictionary of Occupational Titles Reference

Dunn raises two additional issues that merit brief discussion. First, she says that the ALJ erred in improperly evaluating her past work. The ALJ concluded that Dunn was capable of returning to her past work as a general office clerk, but then cited *Dictionary of Occupational Titles* (DOT) # 219.362-014, the job code for an attendance clerk. Tr. 30. The DOT reference for general office clerk is # 219.362.01**0**. This misstep appears to have resulted from the testimony of the vocational expert, who made the same error. Tr. 71 (She "was also a general office clerk, and that DOT is 219.362-014").

Dunn now concedes that this was harmless error. The Court agrees. Both the ALJ and the VE explicitly referred to Dunn's past relevant work as an office clerk. Moreover, the record clearly indicates that Dunn previously worked as an "office worker" and there is no indication that she ever served as an attendance clerk. Tr. 164. Accordingly, it appears that the VE and the

ALJ simply misstated the DOT number for general office clerk. Such a misstatement does not necessitate remand. *See Strickland v. Astrue*, 496 F. App'x 826, 833 (10th Cir. 2012). Since this case will be remanded for other reasons, however, the ALJ should refer to Dunn's past work by its correct DOT reference in his future treatment of it.

## 2. New Evidence

Dunn also contends that the Appeals Council erred by not granting review based on her submission of a December 2, 2013 letter from Dr. Marchand. Tr. 416. The Social Security Administration regulations require the Appeals Council "to evaluate 'new and material evidence' in determining whether a case qualifies for review." *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (citing 20 C.F.R. §§ 404.970(b), 416.1470). The Appeals Council "considered . . . the additional evidence . . . considered whether the Administrative Law Judge's action, findings, or conclusion [was] contrary to the weight of evidence of record . . . [and] found that this information [did] not provide a basis for changing the Administrative Law Judge's decision." Tr. 2. In doing so, it appears to have determined that Dunn's evidence was not "new and material" under 20 C.F.R. § 404.970(b). *Stepp v. Colvin*, 795 F.3d 711, 724-25 (7th Cir. 2015); *Farrell*, 692 F.3d at 771. The Court reviews that determination *de novo*. *Farrell*, 692 F.3d at 771.

The Commissioner persuasively argues that there is no evidence that Dr. Marchand's letter was new for the purposes of 20 C.F.R. § 404.970(b). Evidence is new if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015). The Commissioner points to authority which holds that opinions merely interpreting evidence in the record are not new. *See, e.g., Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Dunn attempts to distinguish her case, noting that

the Commissioner's authority interprets "new evidence" as required for a sentence six remand under 42 U.S.C. § 405(g). She does not, however, make any effort to explain why Dr. Marchand's letter is new for the purposes of 20 C.F.R. § 404.970(b), which she had an obligation to do if she wished to contest the decision of the Appeals Council. *See Barth v. Colvin*, No. 13 CV 7788, 2015 WL 7180094, at *7 (N.D. Ill. Nov. 16, 2015). Moreover, it is unclear how Dr. Marchand's letter—which draws a conclusion based on symptoms Dunn has allegedly suffered due to the implantation of her pacemaker in 2005—would not have been accessible to Dunn at the time of her hearing. Thus, Dunn has failed to demonstrate that the Appeals Council erred in concluding that Dr. Marchand's letter was not new and material evidence. Since her case will be remanded for other reasons, however, the ALJ will nevertheless have an opportunity to consider Dr. Marchand's letter.

*IV. Analytical Summary*

The ALJ's decision requires reversal for two separate reasons. First, the ALJ failed to order an x-ray on Dunn's back. Second, he did not adequately substantiate his findings as to the credibility of Dunn's testimony about her back, shoulder and irritable bowel syndrome, which adversely affected her RFC. The ALJ also referred to Dunn's prior work by an incorrect *Dictionary of Occupational Titles* number. That should be corrected on remand, but does not independently justify reversal. Finally, the Appeals Council did not err in refusing to consider the letter Dunn submitted from Dr. Marchand, but the ALJ will nevertheless have an opportunity to consider it on remand.

## IV.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner denying Dunn's claim for benefits is **REVERSED**, and this matter is **REMANDED** for to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  February 2, 2016

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court